JUDGE DAVID BRIONES

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

EP23CV0279

| | |
|---|---|
| ERIK SALAIZ, | § |
| | § |
| **Plaintiff,** | § |
| | § |
| **v.** | § |
| | § |
| LEGAL TAX DEFENSE, INC., a California | § |
| Corporation | § |
| | § |
| **Defendant.** | § |
| | § |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      The Plaintiff is ERIK SALAIZ ("Plaintiff") a natural person, resident of the Western

District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant LEGAL TAX DEFENSE, INC.  ("LTD" "Defendant") is a corporation

organized and existing under the laws of California and can be served via its registered agent

Mike Martin at 3200 Wilshire Boulevard, North Tower 111, Los Angeles, California 90019.

3.      Unnamed Party JOHN DOE TELEMARKETER ("John Doe") is an unidentified offshore

telemarketing company that makes solicitation phone calls at the instruction, direction, and

oversight of Defendant LTD.

### JURISDICTION AND VENUE

4.      Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's

TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow*

*Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter

jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendant's telemarketing calls to Plaintiff; adds little complexity to the case.

5.      Personal Jurisdiction.  This Court has general personal jurisdiction over the Defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

6.      Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when he received a substantial if not every single call from the Defendant that are the subject matter of this lawsuit.

7.      This Court has venue over the Defendant because the calls at issue were sent by or on behalf of the above-named Defendant to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

8.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number

assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

the consumer: (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.

17.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be

held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

*of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 951 – 52 (9th Cir. 2009).

20.     A corporate officer involved in the telemarketing at issue may be personally liable under

the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal

participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D.

4

Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

## FACTUAL ALLEGATIONS

21.     Plaintiff successfully registered his personal cell phone number (XXX) XXX-0898 on the National Do-Not-Call Registry since August 19, 2021, which was more than 31 days prior to receiving the alleged calls.

22.     Plaintiff never asked the National Do-Not-Call Registry administrator to remove him from the National Do-Not-Call Registry and Plaintiff was on the National Do-Not-Call Registry at all times relevant to this Complaint.

23.     Defendant LTD offers tax debt relief services to consumers nationwide including Texas.

24.     As part of their marketing, Defendant LTD hired and instructed an anonymous offshore telemarketer to make phone calls on behalf of Defendant LTD to tele solicit their tax debt relief services.

25.     John Doe unknown entity, that through information and belief, is located offshore and out of the jurisdiction of the United States and the State of Texas.

26.     John Doe makes solicitation telephone calls at the direction, instruction, and guidance of Defendant LTD.

27.     John Doe makes these calls on behalf of Defendant LTD without prior express written consent from the consumers they call.

28.     John Doe knowingly and willfully makes solicitation phone calls on behalf of Defendant LTD to consumers that have their residential phone numbers registered on the National Do-Not-Call Registry.

29.     Defendant LTD approves of the contracts with John Doe.

5

30.     Defendant LTD authorizes the payments to John Doe.

31.     Defendant LTD pays John Doe out of bank accounts Defendant LTD owns and controls.

32.     Defendant LTD has been sued prior to this lawsuit for violating the TCPA *Berz v. Legal Tax Defense, Inc.*, No. 1:22-cv-03472 (N.IL., Jul. 05, 2022) and continue their illegal behavior because violating the TCPA benefits Defendant LTD financially.

33.     Plaintiff received at least six (6) unauthorized phone calls within a twelve-month period ("the calls") from John Doe calling on behalf of Defendant LTD soliciting tax debt relief services.

34.     John Doe made at least six harassing solicitation calls to Plaintiff calling on behalf of Defendant LTD before Plaintiff was able to identify the company John Doe was calling on behalf of.

35.     Plaintiff has never been a customer of Defendant LTD, and has had no relationship with Defendant LTD.

36.     Defendant LTD or John Doe had no reason to have Plaintiff's phone number 0898 in their possession or in any database or spreadsheet that would have been used to call Plaintiff.

37.     John Doe spoofed the caller ID numbers on every alleged call.

38.     **Calls # 1-5** – Plaintiff received unauthorized calls to his personal cell phone 0898 from John Doe soliciting tax debt relief services on behalf of Defendant LTD.

39.     **Calls # 1-5** – Plaintiff advised the telemarketers from John Doe each time that he was not interested and disconnected each of the calls.

40.     **Call #6** – Plaintiff received an unauthorized call to his personal cell phone 0898 from a telemarketer named Norman calling from John Doe soliciting tax debt relief services on behalf of Defendant LTD.

6

41.     Plaintiff was extremely aggravated for continuing to receive solicitation calls from John Doe and advised Norman he had tax debt for the sole purpose of identifying the company responsible for the alleged calls.

42.     Plaintiff advised Jason he was interested in a cash out option for the sole purpose of identifying the company responsible for the alleged calls.

43.     Norman asked Plaintiff qualifying questions regarding a tax debt relief program from Defendant LTD.

44.     Norman advised Plaintiff he was going to transfer him to a "settlement officer" that will go over all of Plaintiff's options in order to qualify Plaintiff for a tax debt relief program from Defendant LTD.

45.     Plaintiff was then transferred to a settlement officer from Defendant LTD named Alex Moreno.

46.     Before Plaintiff was transferred to Alex, Norman stated to Alex:

"Norman from the call center case ID 243980 I got Erik Salaiz at the end of the line estimated tax debt quoted eleven grand he's interested in the federal tax relief program can you help the gentlemen please"?

47.     Alex accepted the call from Norman which confirmed Defendant LTD hired John Doe to generate new customer leads by making unauthorized solicitation calls to thousands of consumers residential phone numbers, including Plaintiff.

48.     Acting as an agent on behalf of Defendant LTD, John Doe shares a software system that is designed for John Doe to transfer new customer leads directly to Defendant LTD.

49.     Alex stated to Plaintiff,

"Erik my name is Alex I am with legal tax defense I am a settlement officer here my job here is to make sure we can get you some type of debt relief."

7

50.     Alex asked Plaintiff qualifying questions and solicited Plaintiff for a tax relief program on behalf of Defendant LTD.

51.     Alex advised Plaintiff the retainer fee to start the tax investigation would be $500.

52.     Plaintiff received an email from Alex from alex@legaltaxdefense.com that had the contract agreement from Defendant LTD for Plaintiff to sign. *See Exhibit A.*

53.     The email Plaintiff received from Alex revealed and confirmed Defendant LTD was the company responsible for the alleged calls.

54.     With information and belief Defendant LTD relies on John Doe to make telemarketing calls on its behalf, Defendant LTD has direct knowledge that such calls are being made to residential numbers (including cell phones) that are registered on the National Do Not Call Registry without prior express written consent.

55.     With information and belief Defendant LTD relies on John Doe to make telemarketing calls on its behalf, Defendant LTD hired them to interact with the public on Defendant LTD's behalf and therefore gave implied authority to represent Defendant LTD and call residential numbers (including cell phones) that are registered on the National Do Not Call Registry without prior express written consent.

56.     Defendant LTD ratifies the behavior from John Doe by knowing of the illegal conduct and failing to repudiate the conduct.

57.     Plaintiff did not provide his prior express written consent to receive any of the alleged calls.

58.     None of the alleged calls were made for emergency purposes.

59.     Plaintiff made at least five do not call requests ("DNC") to John Doe.

60.     Table below displays the calls made to Plaintiff on behalf of Defendant LTD.

TABLE A

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1. | 05/02/2023 | 9:30 AM | 223-235-5103 | Telemarketer calling from John Doe soliciting tax relief services. Told them I wasn't interested and disconnected the call. **DNC Request #1** |
| 2. | 05/09/2023 | 1:37 PM | 754-356-1004 | Telemarketer calling from John Doe soliciting tax relief services. Told them I wasn't interested and disconnected the call. **DNC Request #2** |
| 3 | 05/17/2023 | 9:19 AM | 717-998-2148 | Telemarketer calling from John Doe soliciting tax relief services. Told them I wasn't interested and disconnected the call. **DNC Request #3** |
| 4 | 05/17/2023 | 2:56 PM | 231-380-3477 | Telemarketer calling from John Doe soliciting tax relief services. Told them I wasn't interested and disconnected the call. **DNC Request #4** |
| 5 | 05/25/2023 | 1:11 PM | 785-367-8375 | Telemarketer calling from John Doe soliciting tax relief services. Told them I wasn't interested and disconnected the call. **DNC Request #5** |
| 6 | 05/30/2023 | 11:41 AM | 325-231-2263 | Telemarketer calling from John Doe soliciting tax relief services. Transferred me to Alex from Legal Tax Defense. Emailed me contract agreement to sign. |

61.     John Doe initiated numerous unsolicited telephone calls, made unlawful telemarketing sales pitches to Plaintiff regarding tax relief services on behalf of Defendant LTD.

62.     Defendant LTD employs, contracts, or authorizes John Doe to make phone calls on their behalf.

63.     John Doe uses various spoofed caller IDs and knowingly and willfully ignore Do Not Call lists in the marketing of services on behalf of Defendant LTD.

64.     Defendant LTD has knowledge of and has adopted and maintained TCPA violations as a sales strategy.

65.     Defendant LTD knew full well that John Doe is calling and harassing consumers in an attempt to procure business on behalf of Defendant LTD.

66.     Defendant LTD willfully accept these referrals and compensate John Doe for their illegal phone calls.

67.     Each and every call was placed while knowingly ignoring the national do-not-call registry.

68.     On July 25, 2023, Plaintiff sent an internal do-not-call policy request to Defendant LTD to email alex@legaltaxdefense.com which is an email owned and operated by Defendant LTD.

69.     Defendant LTD never sent Plaintiff their internal do-not-call policy.

70.     Upon information and belief, Defendant LTD did not train John Doe who engaged in telemarketing on behalf of Defendant LTD, on the existence and use of Defendant's internal do not call policy as John Doe failed to recognize Plaintiff's personal cell phone 0898 is registered on the National Do-Not-Call Registry.

71.     Defendant LTD is not registered pursuant to § 302.101 of the Texas Business & Commerce Code to provide telephone solicitation calls into Texas.

72.     The https://direct.sos.state.tx.us/telephone/telephonesearch.asp website ("Texas Registration Database") does not contain Defendant LTD's registration.

73.     Defendant LTD does not qualify for an exemption under § 302.053.

74.     Plaintiff was harmed by the calls. Plaintiff was temporarily deprived of legitimate use of

his phone because the phone line was tied up during the telemarketing calls and his privacy was improperly invaded. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff. The calls caused Plaintiff's cell phone battery's depletion, used up cellular data, and prevented Plaintiff from otherwise using his telephone for lawful purposes.

## VICARIOUS LIABILITY OF DEFENDANT LTD

75.     Defendant LTD is vicariously liable for the telemarketing calls that generated the lead on their behalf.

76.     The FCC is tasked with promulgating rules and orders related to enforcement of the TCPA. 47 U.S.C. § 227(b)(2).

77.     The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

78.     The FCC reiterated that a company on whose behalf a telephone call is made bears the responsibility for any violations. *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559, 565 ¶ 10 (2008) (recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

79.     The FCC confirmed this principle in a declaratory ruling holding that sellers such as Post may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were

11

judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because sellers may have thousands of independent marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*In re DISH Network, LLC*, 28 FCC Rcd. 6574, 6588 ¶ 37 (2013) (footnote omitted) (alteration marks and internal quotation marks omitted).

80.     More specifically, *Dish* held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* at 6586 ¶ 34.

81.     The ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal agency and immediate direction and control over the third-party who placed the telemarketing call. *Id.* at 6587 ¶ 36 & n.107.

82.     To the contrary, the FCC—armed with extensive data about robocalls and Americans' complaints about them—determined that vicarious liability is essential to serve the TCPA's remedial purpose of protecting Americans from "unwanted telemarketing invasions." *Id.* at 6587 ¶ 36.

83.     Vicarious liability is important because reputable, traceable, and solvent companies that benefit from illegal telemarketing are "in the best position to monitor and police TCPA compliance by third-party telemarketers." *Id.* at 6588 ¶ 37.

84.     Defendant LTD is legally responsible for ensuring that John Doe that makes telemarketing calls on their behalf comply with the TCPA when so doing.

85.     Defendant LTD knowingly and actively accepted business that originated through illegal telemarketing.

86.     Defendant LTD knew (or reasonably should have known) that John Doe was violating the TCPA on their behalf but failed to take effective steps within their power to force them to cease that conduct.

87.     By hiring a company to make calls on its behalf, Defendant LTD "manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency ("Restatement").

88.     Moreover, Defendant LTD maintained interim control over the actions of John Doe.

89.     For example, Defendant LTD had absolute control over whether, and under what circumstances, they would accept a customer from John Doe.

90.     Furthermore, Defendant LTD had day-to-day control over the actions of John Doe and the ability to require them to respect the National Do Not Call Registry.

91.     Defendant LTD also gave interim instructions to John Doe by providing lead-qualifying instructions and lead volume limits.

92.     Defendant LTD donned John Doe with apparent authority to make the calls at issue. Thus, John Doe pitched tax relief services in the abstract.

93.     Apparent authority turns on whether a third party believes the principal authorized its agent to act and the belief is "traceable" to a manifestation of the principal. Restatement § 2.03 cmt. c.

94.     "[A]pparent authority can arise in multiple ways and does *not* require that 'a principal's manifestation must be directed to a specific third party in a communication made directly to that person.'" *Dish*, 28 FCC Rcd. at 6586 ¶ 34 n.102 (quoting Restatement § 2.03 cmt. c).

13

95.     A principal may make a manifestation "by directing an agent to make statements to third parties or directing or designating an agent to perform acts or conduct negotiations, placing an agent in a position within an organization, or placing an agent in charge of a transaction or situation." Restatement § 2.03 cmt. c.

96.     John Doe transferred customer information, including Plaintiff's contact information, directly to Defendant LTD. Thus, John Doe had the "ability . . . to enter consumer information into the seller's sales or customer systems," which the FCC has explained to show apparent agency. *Dish*, 28 FCC Rcd. at 6592 ¶ 46.

97.     Finally, the FCC has held that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-93 ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 ¶ 46.

98.     Defendants LTD is the liable party as the direct beneficiary of the illegal telemarketing calls as they stood to gain Plaintiff as a customer.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

95.     The calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

96.     The calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

97.     The calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

98.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### THE PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

99.     The calls were to Plaintiff's cellular phone 0898 which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

100.    The actions of the Defendant violated the Texas Business and Commerce Code 305.053 by placing unauthorized calls to a cell phone which violates 47 USC 227(b).

101.    The calls by the Defendant violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

### CAUSES OF ACTION:

### COUNT ONE:
### (Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))

102.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

103.    Defendant and/or their affiliates or telemarketers called Plaintiff's private residential

telephone number which was successfully registered on the National Do-Not-Call Registry more

than thirty-one (31) days prior to the calls for the purposes of commercial solicitation, in

violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

104.    Plaintiff was statutorily damaged at least six (6) times under 47 U.S.C. § 227(c)(3)(F) by

the Defendant by the telemarketing calls described above, in the amount of $500.00 per call.

105.    Plaintiff was further statutorily damaged because Defendant willfully and/ or knowingly

violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount

as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

106.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful

violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT TWO:

### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)

107.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

108.    The foregoing acts and omissions of Defendant and/or their affiliates or telemarketers

constitute multiple violations of FCC regulations by making telemarketing solicitations despite

lacking the following:

   a.  A written policy, available upon demand, for maintaining a do-not-call list, in

       violation of 47 C.F.R. § 64.1200(d)(1)[2];

   b.  Training for the individuals involved in the telemarketing on the existence of and

       use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2)[3]; and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

      c.   In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

109.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

110.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT THREE

### (Violations of The Texas Business and Commerce Code 305.053)

111.    Plaintiff incorporates the foregoing allegations as if set forth herein.

112.    The foregoing acts and omissions of Defendant and/or their affiliates or telemarketers constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq.

113.    Plaintiff seeks for himself an award of at least $500.00 in damages for each such violation. **Texas Business and Commerce Code 305.053(b).**

114.    Plaintiff seeks for himself an award of up to $1,500.00 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## COUNT FOUR

### (Violations of Texas Business and Commerce Code 302.101)
### Failure to obtain a Telephone Solicitation Registration Certificate

115.    Plaintiff incorporates and realleges, as though fully set forth herein, each of the

---

[4] *See id.* at 425 (codifying a June 26, 2003 FCC order

paragraphs above.

116.   Defendant and/or their affiliates or telemarketers made at least six (6) solicitation sales calls to Plaintiff without having a valid telephone solicitation as required under Tex. Bus. Com. Code 302.101.

117.   As a result of the Defendant and/or their affiliates or telemarketer's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek damages of up to $5,000 for each violation. Tex. Bus. and Com. Code 302.302(a).

118.   As a result of the Defendant and/or their affiliates or telemarketer's violations of Tex. Bus. and Com. Code 302.101 Plaintiff may seek all reasonable costs of prosecuting this action, including court costs, deposition costs, and witness fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Erik Salaiz prays for judgment against the Defendant jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOES as they are identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendant violates the TCPA and Texas state law;

C.     An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.     An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporation for six (6) calls.

     E.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053 intentional violations jointly and severally against the corporation for six (6) calls.

     F.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101 intentional violations jointly and severally against the corporation for six (6) calls.

     G.      An award to Mr. Salaiz of damages, as allowed by law under the TCPA and Texas state law;

     H.      An award to Mr. Salaiz of interest, costs, and attorneys' fees, as allowed by law and equity.

     I.      Such further relief as the Court deems necessary, just, and proper.

July 27, 2023,                Respectfully submitted,

Erik Salaiz
Plaintiff, Pro Se
319 Valley Fair Way
El Paso, Texas 79907
915-490-0898
Salaiz.ep@gmail.com